Stephens v. Dennison.

THOMAS STEPHENS, Plaintiff, v. AMI P. DENNISON and ZACHA-RIAH C. NORTON, Defendants.

*Adjourned from Washington.    Motion to set aside execution and sale.*

1. An execution is a "*writ*" within the meaning of the 1st section of the Practice Act; and after sale and conveyance of real estate under it, will not be set aside, because the sheriff is directed therein to make "due return thereof."

2. The plaintiff in execution, who buys in defendant's property to satisfy his debt, is chargeable with all irregularities; but a stranger, who buys in good faith, is only chargeable with substantive defects in the proceedings.

ON the 4th of November, 1851, Stephens recovered a judgment for $765 against Norton and Dennison in the District Court of Washington County. Execution was issued on the 23d day of March, 1853, requiring the sheriff, among other things, *to make due return* of the writ; and on the 15th of September, 1853, the sheriff returned that he had levied upon lot No. (2) two, in block 79, in Portland, and that on the 16th of July, 1853, he sold the same *according to law*, to W. H. Barnhart and D. C. Coleman for the sum of $2,700.

The sheriff was ruled to amend his return, which he did by showing that he had posted up the necessary advertisements; but instead of giving defendant, Norton, a notice in writing of the time and place of sale, he told him he had levied upon the said lot, and Norton replied, " it was nothing to him, as he did not own the property." The date of the levy does not appear. The sheriff has paid the full amount of the execution out of the purchase money to Stephens, and made a deed to Coleman and Barnhart for the lot. Due notice of this motion has been given to them. Authorities cited: *Lee* v. *Chapman*, 6 *Humphrey*, 281; *Wilson & Wheeler* v. *Mance & Collins*, 11 *Humphrey*, 189; *Walter et al.* v. *Nelson et al.* 1 *Swan*, 7; *Jackson* v. *Pratt*, 16 *Johnson*, 386; *Jackson* v. *Davis*, 18 *Johnson*, 10; *Jackson* v. *Page*, 4 *Wendell*, 586; *Jackson* v. *Streeter*, 5 *Cowen*, 529; *Woodcock* v. *Bennett*, 1 *Cowen*, 737; 2 *Tidd's Prac.* 1032; 4 *Bingham*, 147.

*Wait*, for plaintiff.

*Campbell & Boise*, for defendants.

WILLIAMS, C. J. Norton now moved to quash the execution, because it commanded the sheriff to make *due return thereof*, instead of commanding him to return it *within thirty days from its date.*

Stephens *v.* Dennison.

Admitting a departure in this execution from the usual form, it does not follow that defendant's objection is well taken. The object of an execution is not to convey legal instructions to the sheriff, but to confer power. The mode of exercising such power when conferred is pointed out by law, to which the officer must look for guidance. Why may not the sheriff be referred to the statutes to learn the time for return of process, when he must consult such statute to find out when and how it must be served? Norton complains of an error, which works no harm to him in any way; and to destroy the title of a purchaser in good faith, because a clerical expression is too general, would be to attempt the correction of a harmless mistake by the commission of a great wrong. The command of the writ objected to is not contrary to law, but consistent therewith, and on motion would be corrected at any time by the court as a matter of course. We are asked to set aside the sale because it was made on the 16th of July, 1853, on an execution dated March 23d of the same year, and returnable by law in thirty days. If all this be true, the sale was irregular. The Iowa act, subjecting real and personal property to execution, was adopted (with some alteration) in this territory on the 29th of September, 1849. This act provides that, when the sheriff levies upon real estate, he shall post up advertisements of the sale for four weeks, and in addition thereto shall give defendant notice in writing of such sale, and makes executions returnable in seventy days from date.

No change was made in these provisions by our legislature, except in substituting thirty for seventy days; so that, while the sheriff was compelled to give four weeks' notice of the sale of land on execution, he was required to return such execution in thirty days from its issuance. In 1851 the Practice Act was passed, the first section of which declares, "*that all writs, issued by any court of record in this territory, shall run in the name of the United States of America, and bear test in the name of the clerk of said court; and shall be sealed with the seal of said court, and made returnable to the first*

*day of the next term after the date of said writ.*" Does this section repeal that part of the act of 1849, which makes executions returnable in thirty days? An execution is a writ. To be regular, it must run in the name of the United States of America, must bear test in the name of the clerk, and be sealed with the seal of the court from which it issues, so that it must conform to the requirements of the said section in every other respect, if not as to the time of its return.

The term *all writs,* as used in this section, it is argued, cannot be taken in its broad sense, for then it would include writs of *habeas corpus, mandamus,* &c. Writs of habeas corpus are generally issued by the judge, and not the court; and it may well be doubted whether any writ, issued under the seal of a court of record, unless otherwise specially provided for, can be made returnable on any other than the first day of the next term after its date. If section first of the Practice Act does not intend *all writs,* as it says, what writs does it mean? The succeeding sections of the act mention writs of *capias, summons, subpœnas* and *execution,* and it would be hardly fair to conclude that only a part of these were contemplated by the first section. We cannot see upon what principle it is alleged that section first applies to a writ of summons, and not to a writ of execution, when they are both treated of alike in subsequent parts of the act. No interference with the act of 1849 was intended, it is said, because that was a distinct and full law upon the subject of executions;—so there is a full and distinct *quo warranto* act; yet the section referred to would certainly control writs of *quo warranto.* Nothing can be more reasonable than this view of the question; for we have only to ascribe an ordinary share of common sense to the legislature to suppose, that, while they required four weeks' notice of a sale upon execution, they would give the sheriff more than thirty days in which to perform his various duties under the writ, and make return according to law. Officers, it is understood, have generally proceeded upon the assumption, that the first section of the Practice Act embraces writs of execution; and,

in cases of doubt—admitting this to be one—we are disposed to follow the prevailing construction of the law, for the sake of the public good.

The motion to set aside the sale is also placed upon the ground, that no written notice thereof was given to Norton. The sheriff's return shows, that when Norton was advised of the levy, he declared that "it was nothing to him, as he did not own the property," and thus, it is claimed, he waived any further notice of the sale. If the plaintiff in execution were purchaser here, the objection for want of notice might be fatal to his title; but to protect the rights of an innocent stranger as purchaser, we are inclined to hold that written notice was waived. As a general rule, when the plaintiff in execution buys in the defendant's property to satisfy his debt, he is chargeable with all irregularities; but a stranger, who buys in good faith, is only chargeable with a substantive defect in the proceedings of the officer. Norton, in this case, either owned the property or he did not. If he did, then he made a false statement to the sheriff, inducing the belief that no steps were necessary to protect his rights at the sale, as he had none to protect; and it would be wrong now to allow him to take advantage of that false statement, by alleging for error what was the probable, if not necessary, result of his own conduct. If Norton did not own the lot, then he has not been injured, and cannot complain. The sheriff, it is said, treated and sold the property as Norton's; therefore, he was bound to give the written notice. Perhaps the plaintiff took the risk of sale, and the sheriff proceeded, believing what Norton had said about his ownership of the lot; but, at any rate, he was not prevented from regarding Norton's statements as a waiver of notice. When, as in this case, the money of a *bona fide* purchaser has irrevocably gone into the hands of the plaintiff in execution, and the sheriff has made a deed pursuant to sale, mere technicalities will not suffice to set aside such a title. Defendant, on execution, must show some positive injury to his rights, or, at least, room for injury; but here Norton complains of a want of notice, when,

in point of fact, he was officially informed of the levy, and then disclaimed all interest in the property seized, instead of taking any steps to protect himself from wrong. We think that Norton ought to be bound by his disclaimer to the sheriff, upon the well-known principle, that where a man is wilfully silent, when he stands by and sees property sold to an honest purchaser, *he* is thereby estopped from afterwards asserting a right to such property. No doubt but that a defendant in execution has a right to have the sale of his real estate set aside by motion, upon a proper presentation of facts to the court; but liberal intendments will be made in favor of a *bona fide* purchaser, who has paid his money and taken a deed. If any body must sustain injury in this matter, it should fall upon Norton; for, if not produced by his acts, he had the requisite knowledge and means to prevent it, while the purchasers, knowing that the sheriff had power, were not bound to inquire into the formal correctness of his proceedings.